**In the Matter of Jack D. HERNDON, Debtor.**

**Bankruptcy No. 89–50252.**

United States Bankruptcy Court, M.D. Georgia, Macon Division.

Aug. 11, 1989.

Robert E. Herndon, Macon, Ga., for debtor.

William M. Flatau, Macon, Ga., trustee.

___

ROBERT F. HERSHNER, Jr., Chief Judge.

## STATEMENT OF THE CASE

Jack D. Herndon, Debtor, filed a petition under Chapter 7 of the Bankruptcy Code on February 1, 1989. Debtor's schedule of personal property lists as an asset a tax shelter annuity with UNUM Company. Debtor schedules his interest in the annuity with a market value of $18,986.43. Debtor seeks to exempt his interest in the annuity under section 44–13–100(a)(2)(E) and (a)(2.1) of the Official Code of Georgia.[1] On March 3, 1989, William M. Flatau, Trustee, filed an objection to Debtor's claimed exemption, alleging that Debtor's tax shelter annuity does not qualify for exemption. A hearing was held on this matter before the Court on March 28, 1989. The Court, having considered the arguments of counsel and the evidence presented, now publishes its findings of fact and conclusions of law.

## FINDINGS OF FACT

Debtor is an employee of the Medical Center of Central Georgia, Macon, Georgia. Medical Center employees may participate, on a voluntary basis, in a tax shelter annuity plan ("annuity plan") with UNUM Life Insurance Company ("UNUM"). Debtor is a participant in this annuity plan. Debtor's interest in this annuity plan has a market value of $18,986.43. All contributions to the annuity plan were voluntarily made by Debtor. No contributions were made by Debtor's employer. Debtor can voluntarily withdraw the proceeds from this annuity plan at any time.[2] Debtor's withdrawals, however, are considered income and are subject to appropriate income taxes.[3]

## CONCLUSIONS OF LAW

Trustee's objection to Debtor's claimed exemptions states that the tax shelter an-

nuity does not qualify for exemption under the Georgia exemption law.[4] Trustee bears the burden of proving that the exemption is not properly claimed. R.Bankr.P. 4003(c). Debtor contends that he may exempt his annuity under section 44–13–100(a)(2)(E) and (a)(2.1). These subsections provide as follows:

(a) In lieu of the exemption provided in Code Section 44–13–1, any debtor who is a natural person may exempt, pursuant to this article, for purposes of bankruptcy, the following property:

. . . .

(2) The debtor's right to receive:

. . . .

(E) A payment under a pension, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;

(2.1) The debtor's aggregate interest in any funds or property held on behalf of the debtor, and not yet distributed to the debtor, under any retirement or pension plan or system:

(A) Which is: (i) maintained for public officers or employees or both by the State of Georgia or a political subdivision of the State of Georgia or both; and (ii) financially supported in whole or in part by public funds of the State of Georgia or a political subdivision of the State of Georgia or both;

(B) Which is: (i) maintained by a nonprofit corporation which is qualified as an exempt organization under Code Section 48–7–25 for its officers or employees or both; and (ii) financially supported in whole or in part by funds of the nonprofit corporation; or

---

1. O.C.G.A. § 44–13–100(a)(2)(E) and (2.1) (Supp. 1989). Debtor erroneously cited § 44–13–100(E)(2.1) as authority for this exemption.

2. The annuity plan provides, however, that all cash withdrawals are subject to a withdrawal charge.

3. The pre-retirement withdrawals may also be subject to a penalty tax.

4. The Court notes that Georgia has opted out of the federal exemption system. Debtor, therefore, must look to Georgia law for his exemptions. *See* 11 U.S.C.A. § 522(b)(1) (West 1979 & Supp.1989).

(C) To the extent permitted by the bankruptcy laws of the United States similar benefits from the private sector of such debtor shall be entitled to the same treatment as those specified in subparagraphs (A) and (B) of this paragraph, provided that the exempt or nonexempt status of periodic payments from such a retirement or pension plan or system shall be as provided under subparagraph (E) of paragraph (2) of this subsection;

O.C.G.A. § 44–13–100(a)(2)(E) and (a)(2.1) (Supp.1989).

■ Debtor's annuity fails to meet the exemption requirements of section 44–13–100(a)(2)(E). Debtor is not receiving payments from the annuity which are necessary for his or his dependent's support. The facts show that the corpus of the annuity rather than periodic payments is in issue.

■ Nor are the requirements of subsection (a)(2.1) met. The plan is maintained by UNUM, not by the State, its political subdivision, or Debtor's employer. The facts do not show that UNUM is a nonprofit corporation. The plan is supported by Debtor's funds, not by the State, Debtor's employer, or any nonprofit organization.

■ Section 44–13–100(a)(2.1)(C)[5] provides that a debtor's aggregate interest in certain retirement or pension plan funds held by the private sector are entitled to exemption if periodic payments from the plan meet the requirements of subsection (a)(2)(E). In *In re Wommack*,[6] this Court noted that section 522(d)(10)(E) of the Bankruptcy Code[7] is substantially similar to Georgia exemption subsection (a)(2)(E).[8] Thus, the legislative history of section 522 and cases interpreting it may provide some guidance for the Court in its analysis of section 44–13–100(a)(2)(E). In *In re Wommack*, this Court stated:

According to the legislative history of section 522, subsection (d)(10) is designed to allow a debtor to exempt benefits that are akin to future earnings. H.R.Rep. No. 595, 95th Cong., 1st Sess. 362, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6318. The standard used to determine whether a contract provides benefits akin to future earnings is "whether account funds may be used only for the purpose of providing retirement benefits...." *In re Pauquette*, 38 B.R. 170, 173 (Bankr.D.Vt.1984). In applying this standard, courts should consider the strictness of the restraints on withdrawal of funds for present, as opposed to future, needs. *In re Pettit*, 61 B.R. 341, 348, 14 Collier Bankr.Cas.2d 1111, 1118 (Bankr.W.D.Wash.1986); *In re Pauquette*, 38 B.R. at 174.

80 B.R. at 580.

The Court notes that the test for exemptibility focuses on the terms and restrictions governing the administration of the annuity plan. *Id.* Under the annuity plan, Debtor can voluntarily withdraw the proceeds at any time. The Court previously noted that certain withdrawal and tax consequences may result from pre-retirement withdrawals. The Court, however, believes that the annuity does not meet the requirements of section 44–13–100(a)(2)(E).

Debtor states that he will suffer an undue hardship if Trustee seizes the funds because Debtor will be taxed on the withdrawal. Trustee, however, concedes that he, and not Debtor, will have to pay certain taxes on the withdrawal and stands ready to do so. *See In re Kochell*, 804 F.2d 84 (7th Cir.1986).

■ Finally, Trustee contends that the annuity plan does not qualify for exclusion from property of the estate as a spendthrift trust. Section 541(c)(2) of the Bank-

---

**5.** This code provision was created by the Georgia Legislature in 1988 and did not become effective until July 1, 1988. There are, therefore, very few decisions interpreting this code subsection.

**6.** 80 B.R. 578 (Bankr.M.D.Ga.1987).

**7.** 11 U.S.C.A. § 522(d)(10)(E) (West 1979 & Supp.1989).

**8.** *Compare* 11 U.S.C.A. § 522(d)(10)(E) (West 1979 & Supp.1989) *with* O.C.G.A. § 44–13–100(a)(2)(E) (Supp.1989).

ruptcy Code[9] provides: "(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C.A. § 541(c)(2) (West Supp.1989). The phrase "applicable non-bankruptcy law" refers only to state spendthrift trust law. *Lichstrahl v. Bankers Trust (In re Lichstrahl),* 750 F.2d 1488, 1490 (11th Cir. 1985). This Court is bound by the Eleventh Circuit decision in *Lichstrahl* as it interprets "non-bankruptcy law" to refer only to state spendthrift trusts. Furthermore, the legislative history of section 541(c)(2) shows that Congress intended its reference to "applicable non-bankruptcy law" to exempt from the estate only those spendthrift trusts traditionally beyond the reach of creditors under state law. *Goff v. Taylor (In re Goff),* 706 F.2d 574, 582 (5th Cir. 1983).

Trustee argues that Debtor's tax sheltered annuity is not a trust. Trustee has not, however, cited any case law to support his contention. The Court will, therefore, consider whether the annuity plan otherwise meets the requirement of section 541(c)(2).

The validity of spendthrift trusts in Georgia is a matter about which there has been a considerable difference of opinion for decades. The only reference to spendthrift trusts in the current Georgia Code is in section 53–12–3(d) of the Official Code of Georgia.[10] Rehberg, *Wills, Trusts and Administration of Estates,* 40 Mercer L.Rev. 474 (1988). Whether Georgia law permits the creation of spendthrift trusts for persons sui juris is an open question. *Craddock v. Anderson,* No. C–86–1815A (N.D.Ga. Dec. 31, 1986). The Eleventh Circuit, in *Lichstrahl,* stated: "Because the purpose of a spendthrift trust is to protect the beneficiary from himself and from his creditors, such a trust fails where the beneficiary exercises 'absolute dominion' over the property of the trust." *Lichstrahl,* 750 F.2d at 1490. The beneficiary in *Lichstrahl* could not assign or alienate his interests in the trust. He could, however, amend or terminate the trust. The Court held that the beneficiary had absolute dominion over the trust.

There is a strong public policy against any person placing his property in what amounts to a revocable trust for his own benefit which would be exempt from the claims of his creditors. *Lichstrahl,* 750 F.2d at 1490 (citing *Judson v. Witlin (In re Witlin),* 640 F.2d 661, 663 (5th Cir. Unit B Mar. 1981)).

Debtor's annuity plan provides:

NONASSIGNABILITY: No sum payable under the Group Annuity Contract may be sold, discounted, or pledged as collateral for a loan or as a security for the performance of any obligation to anyone other than the company. To the fullest extent allowed by law, no such sum shall be subject to any legal process for payment of any claim against the payee.

Debtor, however, can voluntarily withdraw the proceeds from the annuity at any time.[11] This Court finds that Debtor's annuity does not contain sufficient anti-alienation provisions to qualify it as a spendthrift trust as required by *Lichstrahl.* The Court finds that Debtor's interest in the annuity is property of the estate.

Because Debtor has fully utilized his exemptions under section 44–13–100(a) of the

---

9. 11 U.S.C.A. § 541(c)(2) (West Supp.1989).

10. O.C.G.A. § 53–12–3(d) (Supp.1989). This code section became effective July 1, 1988 and applies to all testamentary or inter vivos trust, whether in existence on July 1, 1988, or created thereafter. O.C.G.A. § 53–12–3(h)(3) (Supp. 1989). This new code section simply gives courts powers to terminate an executory trust in certain circumstances regardless of any spendthrift or similar protective provision.

11. *Cf. Craddock v. Anderson,* No. C–86–1815A (N.D.Ga. Dec. 31, 1986) (Debtor's ERISA Profit Sharing Plan enforceable under applicable nonbankruptcy law. Debtor had no access to funds except upon termination of employment. Participation was mandatory.) *In re Griggs,* 101 B.R. 393 (Bankr.M.D.Ga.1989) (Debtor could obtain access to ERISA funds only upon termination of employment. There was no provision allowing debtor to borrow against his interest in the fund; participation in fund is mandatory).

Official Code of Georgia,[12] all the funds in Debtor's annuity should be turned over to Trustee for the benefit of Debtor's creditors, subject to any taxes which may be due.

---

**12.** O.C.G.A. § 44–13–100(a) (Supp.1989).